**CLOSED**

<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JENNIFER L. GARIBAY, | : | |
| | : | Civil Action No. 07-1867 (SRC) |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

**CHESLER**, District Judge

      This matter comes before the Court on the appeal by Plaintiff Jennifer L. Garibay

("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner")

determining that she is not eligible for Social Security Disability Benefits or Supplemental

Security Income Benefits under the Social Security Act ("the Act").  This Court exercises

jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties

without oral argument, pursuant to L. Civ. R. 9.1(b), finds that the Commissioner's decision is

supported by substantial evidence and is hereby **AFFIRMED**.

## I.  BACKGROUND

      Plaintiff, presently 33 years old, filed an application for Disability Insurance Benefits

("DIB") on February 13, 2004 (Tr. 77-79) and for Supplemental Security Income Benefits

("SSI") on January 15, 2004 (Tr. 281-83) claiming disability beginning on July 27, 2003 (Tr. 77,

281).   In her Disability Report, Plaintiff claimed that she suffers from "degenerative disc disease and arthritis thr[ough] whole back, pain in my joints[.]" (Tr. 94.)  She stopped working on July 28, 2003.[1]  (Tr. 94.)  In her Disability Report, she claims that she ceased working due to "pain and strict limitations [her] doctor put [her] on Disability" (Tr. 94); however, at the hearing, Plaintiff testified that she was fired the day prior to going on disability due to an "outburst" that her employer claimed she had, although she disputes that the outburst occurred (Tr. 329-330). Her last job, which she held for just under a year, was as a secretary in a chiropractic office.  (Tr. 85, 95.)  Prior to that, in the last fifteen years, she worked in ten different positions as an assembly technician, a gas station attendant, a file clerk supervisor, a cashier, a kennel assistant, a counter person, and a sales associate.  (Tr. 85, 95.)

Plaintiff's DIB and SSI applications were both denied initially (Tr. 31-32) and on reconsideration (Tr. 39-42 (DIB); Tr. 291-95 (SSI)).  Plaintiff requested a hearing (Tr. 43-45), and a hearing was held before Administrative Law Judge ("ALJ") Dennis O'Leary on March 22, 2006[2] (Tr. 296).  ALJ O'Leary issued a decision on September 28, 2006 finding that Plaintiff was not disabled.  (Tr. 28.)  Plaintiff requested a review of the decision by the Appeals Council on October 2, 2006.  (Tr. 18.)  The request was denied on February 23, 2007, making the ALJ's decision the final decision of the Commissioner.  (Tr. 5-7.)

## II.  DISCUSSION

---

[1] In different portions of her Disability Report, Plaintiff identifies July 28, 2003 and August 8, 2003 as her final day of work.  (R. 94-95.)

[2] In her brief, Plaintiff writes that the hearing took place on January 28, 2005, but no citation is given to support that date nor is the January date reflected in the record.  (Pl.'s Br. 2.)

A.    <u>**Standard of Review**</u>

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C.

§ 405(g) and must affirm the Commissioner's decision if it is "supported by substantial

evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); <u>Stunkard v. Sec'y of Health and Human Servs.</u>, 841

F.2d 57, 59 (3d Cir. 1988); <u>Doak v. Heckler</u>, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (<u>quoting</u> <u>Consol. Edison Co. v.</u>

<u>NLRB</u>, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla, but need

not rise to the level of a preponderance."  <u>McCrea v. Comm'r of Soc. Sec.</u>, 370 F.3d 357, 360 (3d

Cir. 2004).  The reviewing court must consider the totality of the evidence and then determine

whether there is substantial evidence to support the Commissioner's decision.  <u>See</u> <u>Taybron v.</u>

<u>Harris</u>, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its

conclusions for those of the fact-finder."  <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir.

1992), <u>cert. denied</u> <u>sub nom.</u> <u>Williams v. Shalala</u>, 507 U.S. 924 (1993).  If the ALJ's findings of

fact are supported by substantial evidence, this Court is bound by those findings, "even if [it]

would have decided the factual inquiry differently."  <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d

Cir. 2001); <u>see also</u> <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999).

In determining whether there is substantial evidence to support the Commissioner's

decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses

and expert opinions of treating and examining physicians on subsidiary questions of fact; (3)

subjective evidence of pain testified to by the claimant and corroborated by family and neighbors;

(4) the claimant's educational background, work history and present age."  Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973).  "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision."  Sassone v. Comm'r of Soc. Sec., 165 F. App'x 954, 955 (3d Cir. 2006) (citing Blalock, 483 F.2d at 775).

**B.      Standard for Awarding Benefits Under the Act**

The claimant bears the initial burden of establishing his or her disability.  42 U.S.C. § 423(d)(5).  To qualify for SSI benefits, a claimant must first establish that he or she is aged, blind, or "disabled[,]" 42 U.S.C. § 1381a, see 42 U.S.C. § 1382c, and DIB benefits require a showing "of disability[,]" 42 U.S.C. § 423.  A claimant is deemed "disabled" under the Act if he or she is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  Disability is predicated on whether a claimant's impairment is so severe that he or she "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  Finally, while subjective complaints of pain are considered, alone, they are not enough to establish disability.  42 U.S.C. § 423(d)(5)(A).  To demonstrate that a disability exists, a claimant must present evidence that his or her affliction "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

C.       **The Five-Step Evaluation Process**

Determinations of disability are made by the Commissioner pursuant to the five-step process outlined in 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one through four.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

At the first step of the evaluation process, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[3]  20 C.F.R. §§ 404.1520(a)(4)(i), (b). If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied.  Id.; Yuckert, 482 U.S. at 141.

At step two, the Commissioner must determine whether the claimant is suffering from a severe impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), (c).  An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. 404.1520(c).  In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered.  Id.  If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).  If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled under the Social Security Act.  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the

---

[3] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

Third Circuit found that, to deny a claim at step three, the ALJ must specify which listings[4] apply and give reasons why those listings are not met or equaled.  In Jones v. Barnhart, 364 F.3d 501 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.  Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  Id. at 505.  An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant Listing." Scatorchia v. Comm'r of Soc. Sec., 137 F. App'x 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), (e).  If the claimant is able to perform his past relevant work, he or she will not be found disabled under the Act.  20 C.F.R. §§ 404.1520(a)(4)(iv).  In Burnett, the Third Circuit set forth the analysis required at step four:

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

Burnett, 220 F.3d at 120.  If the claimant is unable to resume his or her past work, and his or her condition is deemed "severe," yet not listed, the evaluation moves to the final step.

---

[4] Hereinafter, "listing" refers to the list of severe impairments as found in 20 C.F.R. Subpart 404, Part P, Appendix 1.

At the fifth step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy that the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity.  20 C.F.R. §§ 404.1512(g), 404.1520(a)(4)(v), 404.1560(c)(1).  If the ALJ finds a significant number of jobs that claimant can perform, the claimant will not be found disabled.  20 C.F.R. § 404.1520(a)(4)(v).  Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), in the fifth step, the Commissioner "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled."  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).

When the claimant has only exertional limitations, the Commissioner may utilize the Medical-Vocational Guidelines found in 20 C.F.R. Subpart 404, Part P, Appendix 2 to meet the burden of establishing the existence of jobs in the national economy.  These guidelines dictate a result of "disabled" or "not disabled" according to combinations of factors (age, education level, work history, and residual functional capacity).  The guidelines also reflect the administrative notice taken of the numbers of jobs in the national economy that exist for different combinations of these factors.  20 C.F.R. Subpart 404, Part P, Appendix 2, Paragraph 200.00(b).  When a claimant's vocational factors, as determined in the preceding steps of the evaluation, coincide with a combination listed in Appendix 2, the guideline directs a conclusion as to whether an individual is disabled.  20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458 (1983).  The claimant may rebut any finding of fact as to a vocational factor.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(a).

Additionally, throughout the disability determination process, the Commissioner must "consider the combined effect of all of the individual's impairments without regard to wehther

7

any such impairment, if considered separately, would be of" sufficient severity to qualify the claimant for benefits.  42 U.S.C. § 423(d)(2)(B).  However, the burden still remains on the Plaintiff to prove that the impairments in combination are severe enough to qualify him or her for benefits.  See Williams v. Barnhart, 87 F. App'x 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability).

Finally, while Burnett involved a decision in which the ALJ's explanation of his step three determination was so inadequate as to be beyond meaningful judicial review, the Third Circuit applies its procedural requirements, as well as its interpretation in Jones v. Barnhart, to every step of the decision.  See, e.g., Rivera v. Commissioner, 164 F. App'x 260, 262 (3d Cir. 2006).  Thus, at every step, "the ALJ's decision must include sufficient evidence and analysis to allow for meaningful judicial review," but need not "adhere to a particular format."  Id.

**D.     The ALJ's Decision**

In brief, the issues before the ALJ were whether Plaintiff was disabled within the meaning of the Social Security Act since July 27, 2003 and, relating to Plaintiff's claim for DIB and a period of disability, whether Plaintiff met the insured status requirements of sections 216(i) and 223 of the Social Security Act.  (Tr. 22.)  The ALJ examined the record and determined that: 1) at step one, Plaintiff had not engaged in substantial gainful activity during the relevant time period; 2) at step two, Plaintiff had the severe combination of impairments of back disorder and depression and the psychiatric functional limitations of "mild restrictions of activities of daily living; mild difficulties in maintaining social functioning, mild deficiencies of concentration, persistence or pace; and no episodes of decompensation"; 3) at step three, Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the

8

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" despite the ALJ's focus on

"Listings 1.00 (Musculoskeletal System) and 12.00 (Mental Disorder)"; and 4) at step four,

Plaintiff retained the residual functional capacity to perform her past relevant work as a secretary.

(Tr. 24-28.)  Due to the ALJ's determination at step four, no step five analysis was required.  In

conclusion, the ALJ determined that Plaintiff was not under a disability as defined in the Social

Security Act from July 27, 2003 through September 28, 2006, the date of the ALJ's decision.

(Tr. 22.)

In coming to this determination, the ALJ relied on Plaintiff's accounts of her own health

and the records and reports of St. Peter's Hospital's emergency department, Dr. Mark Friedman,

Plaintiff's treating physician, a Division of Disability Determination Services ("DDS")

physician's Physical Residual Capacity Assessment dated April 1, 2004, and a consultive

orthopedic evaluation by DDS doctor Ronald Bagner, M.D., the latter of which the ALJ gave

"considerable weight[.]"  (Tr.24-27.)  The ALJ gave "less weight" to the opinion of psychiatrist

Pradip Gupta, M.D. that was based on his DDS consultive psychiatric evaluation of Plaintiff.

Specifically, the ALJ wrote that Dr. Gupta

> opined that [Plaintiff] has no limitations that affect her ability to understand,
> remember, and carry out instructions affected by the impairment and no
> limitations in her ability to respond appropriately to supervision, co-workers and
> work pressures in a work setting.  After a review of the entire record, I am of the
> opinion that [Plaintiff] does have slight limitation in her ability to respond
> appropriately to supervision, co-workers and work pressures in a work setting.  As
> previously stated, [Plaintiff] has a problem work history.  She has difficulties and
> then moves on to other jobs.  She admitted that she got fired from her last job
> because she 'blew up' at her boss.

(Tr. 27.)  After reviewing all of this information, the ALJ concluded that Plaintiff's "medically

determinable impairments could reasonably be expected to produce the alleged symptoms, but

that [Plainitff's] statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely credible."  (Tr. 27.)

> **E.**     **Plaintiff's Appeal**

Plaintiff contends that the ALJ's decision should be reversed because: 1) the ALJ insufficiently articulated an evidentiary basis for his residual functional capacity ("RFC") determination (Pl.'s Br. 19-23); 2) the ALJ's decision insufficiently evaluates Plaintiff's subjective complaints of pain (Pl.'s Br. 23-29); and 3) "the decision does not abide by the Commissioner's insistence that the tasks of past work be compared with the RFC" (Pl.'s Br. 29-33).  Plaintiff argues that the ALJ's opinion in this case should be reversed because "substantial evidence in the administrative record establishes entitlement and eligibility for and to the benefits applied for[,]" so this Court should order the payment of benefits.  (Pl.'s Br. 13.)  In the alternative, Plaintiff argues that a remand is required with an order for a new hearing and a new decision, because "the Commissioner's final administrative decision is not based on the substantial evidence of record[.]" (Pl.'s Br. 13.)

Plaintiff's first argument, that the ALJ insufficiently articulated an evidentiary basis for his residual functional capacity determination, is without merit.  The core of Plaintiff's contention is that the ALJ's RFC analysis consists of nothing more than a conclusory paragraph that states the finding itself and then makes non-specific statements as to the basic types of evidence relied upon.  (Pl.'s Br. 19-23; Tr. 26-27.)  In her brief, Plaintiff places extensive reliance on the Third Circuit's requirements for determining RFC as described in <u>Cotter v. Harris</u>, 642 F.2d 700 (3d Cir. 1981) and explained more recently in <u>Burnett</u>, 22 F.3d at 121, claiming that the ALJ failed to meet the circuit court's standard.  The Third Circuit explained,:

> In making a residual functional capacity determination, the ALJ must consider all evidence before him.  Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his

reason(s) for discounting such evidence. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."

Burnett, 22 F.3d at 121 (citations omitted).

The ALJ's decision demonstrates that he "consider[ed] all evidence before him." See Burnett, 22 F.3d at 121. In contrast to Burnett, where the Third Circuit listed a series of objective medical evidence that was ignored by the ALJ, Plaintiff fails to show that the ALJ ignored contradictory evidence, and in its review of the record, the Court was unable to find any evidence that was overlooked. See id. at 122-23. Instead, in formulating Plaintiff's RFC, the ALJ offered a detailed explanation of why he rejected Plaintiff's description of her symptoms and why he relied more heavily on Dr. Bagner's assessment than Dr. Gupta's, specifically that he determined Plaintiff to suffer from greater limitations than those identified by Dr. Gupta.

In his decision, the ALJ found that Plaintiff "has the residual functional capacity to lift and/or carry a maximum of 10 pounds; stand and/or walk 2 hours in an 8 hour workday and sit up to 6 hour[s] in an 8 hour workday." (Tr. 26.) This finding is followed by a three paragraphs evaluating Plaintiff's impairments, using both medical evidence and Plaintiff's own accounts of her limitations. (Tr. 27.) The first paragraph states that all symptoms that the ALJ found to be consistent with objective medical evidence were considered in determining the RFC, and, based on that evidence, Plaintiff's description of the "intensity, persistence and limiting effects" of her symptoms was "not entirely credible[.]" (Tr. 27.) The second paragraph extensively compares the medical evidence to Plaintiff's activities and testimony to explain why the ALJ found that Plaintiff's testimony lacks credibility. (Tr. 27.) The third paragraph analyzes the opinions resulting from Doctors Bagner and Gupta's consultive examinations. (Tr. 27.)

Further, the ALJ's RFC finding is supported by the physical consultive examinations

11

within the record.  Plaintiff underwent two Physical RFC Assessments, one on April 1, 2004 and

one by Dr. Bagner on May 18, 2006.  (Tr. 173-180 (April 1 RFC Assessment), 271-277 (Dr.

Bagner's RFC Assessment).)  The April 1, 2004 RFC Assessment found that Plaintiff could

occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds.  (Tr. 174.)

Dr. Bagner's May 2006 RFC Assessment agreed regarding Plaintiff's occasional lifting

limitations but found that she could frequently lift and/or carry 20 pounds.  (Tr. 274.)  Regarding

standing and walking limitations, the April 1, 2004 RFC found that Plaintiff was limited to four

hours and Dr. Bagner found that Plaintiff was capable of "at least two hours in an 8-hour

workday."  (Tr. 174,  274.)  The ALJ's determination that Plaintiff could "stand and/or walk 2

hours in an 8 hour workday" (Tr. 26) was in line with Dr. Bagner's assessment and more limiting

than the April 2004 RFC Assessment.  Finally, the April 1, 2004 RFC Assessment found that

Plaintiff could "sit (with normal breaks) . . . about 6 hours in an 8-hour workday" (Tr. 174), Dr.

Bagner found no limitations on sitting, and the ALJ's finding that Plaintiff could "sit up to 6

hour[s] in an 8 hour workday" (Tr. 26) reflected the assessment that placed a greater limitation

on Plaintiff's abilities.  As such, the ALJ's determination was reflective of the two RFC

assessments, with the only departure being the ALJ's more conservative finding that Plaintiff

could only lift 10 pounds and not specifying the frequency.  (Tr. 26.)  As such, the ALJ's analysis

satisfies the standard articulated in Cotter and Burnett, and the supporting records provide

sufficient evidence to support the ALJ's RFC determination.  See Burnett, 22 F.3d at 121;

Stunkard, 841 F.2d at 59.

　　　　Plaintiff's next argument, that the ALJ's "decision does not evaluate Plaintiff's subjective

complaints of pain in accordance with the Commissioner's mandate" (Pl.'s Br. 23) is also

meritless.  Plaintiff asserts that the ALJ failed to engage in a thorough analysis of Plaintiff's

subjective complaints of pain and that the ALJ's "decision offers no answers [as to the ALJ's rejection of Plaintiff's subjective complaints] other than the lamentable character assassination regarding [P]laintiff's need for Oxycotin and Morphine, her spotty work record, [and] her motherhood of two small children."  (Pl.'s Br. 28.)  The ALJ's conclusion regarding Plaintiff's subjective complaints of pain was that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  (Tr. 27.)

Although subjective complaints of pain alone are not sufficient to establish disability, 42 U.S.C. § 423(d)(5)(A),

> [t]he ALJ must give serious consideration to the plaintiff's subjective complaints of pain, even when those assertions are not fully confirmed by objective medical evidence.  Welch v. Heckler, 808 F.2d 264, 270 (3d Cir. 1986).  The ALJ, though, is not obliged to accept without question the credibility of such subjective evidence.  Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  The ALJ has discretion "to evaluate the credibility of a claimant and to arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant." Brown v. Schweiker, 562 F.Supp. 284, 287 (E.D.Pa. 1983) (quoting Bolton v. Secretary of HHS, 504 F.Supp. 288 (E.D.N.Y. 1980)).

LaCorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988).  In evaluating the credibility of subjective evidence, an ALJ considers the claimant's

> daily activities, [t]he location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; [p]recipitating and aggravating factors; [t]he type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or [has] taken to alleviate [his or her] pain or other symptoms; [t]reatment, other than medication, [the claimant] receive[s] or [has] received for relief of [his or her] pain or other symptoms; [a]ny measures [the claimant] use[s] or [has] used to relieve [his or her] pain or other symptoms . . . ; and [o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3) (numbering omitted).

In his decision, immediately after concluding that Plaintiff's subjective complaints of pain were not entirely credible, the ALJ evaluated Plaintiff's daily activities, the steps taken to alleviate the pain, and whether treatments other than medication have been used.  (Tr. 27.) Specifically, the ALJ wrote:

> [Plaintiff] testified that she was in a car accident, however, months later she started going to [a] pain management doctor without any treatment at all.  She said that she is unhappy that the doctor will not give her referrals to orthopedists or a psychiatrist although the reports in the file from the doctor indicate that she was just taking medication and would not go for physical treatment.  The actual medical evidence is very weak.  The MRIs all refer to her back problems as 'mild' and there is not even evidence of a herniation.  She has been on morphine and oxicotin in amounts totally out of synch for the nature of the impairment. [Plaintiff] is suggesting at the hearing that the pain management doctor is keeping her from getting treatment but the record, as well as logic[,] suggest that she went there for the drugs and it was her that was resisting treatment.  The doctor has her on a lot of percocet but has taken her off the oxicotin and morphine.  At the conclusion of the hearing [Plaintiff] did concede that she is a recovering alcoholic. Her daily activities are pretty functional.  She has two children, 5 and 3 1/2 and she is able to take care of them throughout the day.  She gets help on occasion [from] her parents with whom she lives.  She is able to drive locally and spends the day reading a lot.  That suggests that she is fully able to concentrate and focus. . . . She now states that she wants to go to another doctor but he won't refer her. The claimant was asked by the undersigned why she didn't just get another primary physician.  Her answer was that this is a hassle and takes a lot of time on the phone (actually it can be done online) and that her back hurts if she's on the phone too much.  The answer was not reasonable and it leads me to wonder what the real reason is.

(Tr. 27.)  The ALJ's categorization of Plaintiff's treatment history is supported by the record. Her initial examination by Dr. Friedman was August 8, 2003; from that date until April 3, 2004, Dr. Friedman prescribed OxyContin for pain relief and repeatedly prescribed physical therapy, although Plaintiff stated that she was having problems obtaining approval for physical therapy from her insurance company.  (Tr. 216-231, 199-202.) Her records reflect that she did not begin physical therapy until some point between July 13, 2004 and July 26, 2004, but the physical

14

therapy was effective.  (Tr. 201-227.)  However, contrary to the Doctor's advice, she stopped physical therapy prior to her November 5, 2004 appointment with Dr. Friedman and no return is noted in the medical records, which, incidently, stop as of December 3, 2004.  (Tr. 209-210.)

Further, the ALJ noted that Plaintiff's "treating doctor has stated in a report dated December 3, 2004 that her pain is well controlled with medication."  (Tr. 27.)  The record supports this finding, with similar statements being made in reports by Dr. Friedman from September 2004 until the most recent record, December 3, 2004.  See Tr. 210 (on December 3, 2004 Dr. Friedman wrote that Plaintiff's pain medication, which at the time was Endocet, "seems to control the pain enabling her to function in a more normal manner with less difficulty"); see also Tr. 206 (Sept. 24, 2004 examination notation by Dr. Friedman noting that the medication controlled Plaintiff's pain to allow her to function "in a more normal manner"; Tr. 207 (same notation on Oct. 8, 2004); Tr. 208 (same notation on Oct. 22, 2004); Tr. 209 (same notation on Nov. 5, 2004).

The ALJ's reasoning regarding Plaintiff's subjective complaints of pain is in compliance with the standard described in LaCorte and Social Security regulations, since the ALJ compared Plaintiff's medical records to her subjective complaints in coming to his conclusion that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible" (Tr. 27).  See LaCorte, 678 F. Supp. at 83; 20 C.F.R. § 404.1529(c)(3).  Furthermore, as demonstrated above, substantial evidence in the record supports the ALJ's conclusion and reasoning.  See Burnett, 22 F.3d at 121; Stunkard, 841 F.2d at 59.

Plaintiff's third argument is that the ALJ's "decision does not abide by the Commissioner's insistence that the tasks of past work be compared with the RFC[.]" (Pl.'s Br. 29.)  Specifically, Plaintiff asserts that the ALJ's decision "merely issues a blanket assurance that

15

[Plaintiff] can resume this non-descript, non-tasked job as secretary." (Pl.'s Br. 32.) Despite Plaintiff's arguments, the Court finds that the ALJ sufficiently compared Plaintiff's RFC to her past relevant work as a secretary.

In this case, although not set forth in detail during his step four discussion, the ALJ's decision as a whole bolstered by the totality of the medical evidence sufficiently addressed the fourth prong of the Burnett three-step analysis in determining that Plaintiff's residual functional capacity enabled her to perform her past relevant work. See Burnett, 220 F.3d at 120; see also Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, In General, SSR 82-62 (1982). As explained above, the ALJ sufficiently explained the reasoning behind his determination of Plaintiff's RFC, and that finding is supported by substantial evidence. See supra p.10-12. In coming to that determination, the ALJ found that Plaintiff "is fully able to concentrate and focus" and she "would be able to do at least sedentary work." (Tr. 27.) Although the ALJ never engaged in a detailed analysis of what secretarial work entails, at no point is it argued by Plaintiff that secretarial work is not sedentary. Furthermore, the Third Circuit's treatment of the past relevant work of secretary accepts it to be sedentary work. See, e.g., Milano v. Comm'r of Soc. Sec., 152 F. App'x 166, 169-70 (3d Cir. 2005). Further, in his analysis, the ALJ notes that Plaintiff did not cease working due to an inability to perform her job as a secretary; instead, she was terminated "for 'blowing up' at her boss." (Tr. 28.) As such, although the ALJ did not engage in a detailed explanation in his comparison of Plaintiff's RFC and her past relevant work, the underlying record and the ALJ's decision were sufficiently developed to show that a "meaningful review" took place. See Jones, 364 F.3d at 505. The ALJ's conclusion and reasoning are therefore supported by substantial evidence in the record. See Burnett, 22 F.3d at 121; Stunkard, 841 F.2d at 59.

16

Finally, although not raised directly as an argument, Plaintiff asserts that the ALJ ignored medical evidence that demonstrated the severity of Plaintiff's condition.  (Pl.'s Br. 14; see also Pl.'s Br. 32 ("[h]ow long would this Court's secretary last with a GAF of 50, with muscle spasms, with an inability to sit, with numbness in the hands preventing word processing?").) Specifically, Plaintiff focuses on records of "two MRIs confirming disc dessication at L3-L4, degenerative disc disease in her thoracic and lumbar spines and defuse disc bulges which impressed on the thecal sac surrounding the spinal cord"; spinal surgery that Plaintiff underwent in January 2006; "electromyographical nerve conduction studies which confirmed lumbar lordotic neuropathy and bilateral lumbar radiculopathy at L5-S1"; and Dr. Gupta's conclusion that Plaintiff suffered from "a chronic depressive reaction, chronic pain syndrome and [was] operating at a global assessment of functioning (GAF) of 50."  (Pl.'s Br. 14; see Pl.'s Br. 15-18.) The ALJ's treatment of this information, however, is supported by substantial evidence in the record.  See Burnett, 22 F.3d at 121; Stunkard, 841 F.2d at 59.

First, the ALJ considered evidence of Plaintiff's back ailments.  In determining that Plaintiff has the severe impairment of a back disorder, the ALJ took note of the findings from the two MRIs and the electromyography/nerve conduction study in Plaintiff's record.  (Tr. 25.) However, during his analysis, the ALJ noted that "the MRIs all refer to her back problems as 'mild' and there is not even evidence of a herniation."  (Tr. 25.)  Further, the ALJ relied heavily on Dr. Bagner's report, which acknowledged Plaintiff's back problems by concluding that Plaintiff was "status-post lumbar discectomy [and had] lumbar radiculopathy[.]"  (Tr. 27, 272.) However, the ALJ agreed with Dr. Bagner's findings that Plaintiff could, despite these back ailments, perform sedentary work.  (Tr. 27; Tr. 274-75 (Dr. Bagner's findings that, despite her back problems, Plaintiff was able to "lift and/or carry" up to 20 pounds, stand or walk for "at

17

least 2 hours in an 8-hour workday[,]" and sit for an unlimited duration during an 8 hour

workday).)  As such, substantial evidence supports the ALJ's decision that Plaintiff's back

conditions did not prevent her from performing sedentary work.  See Burnett, 22 F.3d at 121;

Stunkard, 841 F.2d at 59.

Second, in his step two analysis, the ALJ noted that Plaintiff "reported she underwent a

lumbar discectomy in January 2006" but then noted that no records of this surgical procedure

were included in the record before him.  (Tr. 25.)  At steps one through four, a plaintiff holds the

burden of proof.  42 U.S.C. § 423(d)(5); Plummer, 186 F.3d at 428.  Here, Plaintiff has failed to

produce any medical records that indicate that she underwent a lumbar discectomy or that explain

the effects of that surgery.  Due to this complete absence of objective medical evidence, the

ALJ's decision to not consider the surgery in his determination of whether Plaintiff had a severe

impairment or at any point thereafter is supported by substantial evidence.  See Burnett, 22 F.3d

at 121; Stunkard, 841 F.2d at 59.

Finally, Plaintiff repeatedly highlights the portion of Dr. Gupta's Axis I diagnosis from

the psychiatric evaluation that found Plaintiff to have "[c]hronic depressive reaction"; the Axis

III diagnosis reporting "[c]hronic pain syndrome, shoulder pain, neck pain and back pain and

status post lumbar disc disease and sciatic radiculopathy"; and the Axis V diagnosis stating that

Plaintiff's "GAF score is 50."  (Tr. 265; see Pl.'s Br. 14, 32.)  Plaintiff alleges that the ALJ

"rejects [Dr. Gupta's analysis] entirely" and focuses heavily on Plaintiff's GAF score.  (Pl.'s Br.

16.)  However, the ALJ's treatment of Dr. Gupta's medical opinions is supported by substantial

evidence.  See Burnett, 22 F.3d at 121; Stunkard, 841 F.2d at 59.

The Court will first address Plaintiff's argument regarding Plaintiff's GAF score of 50.

"GAF measures the psychological, social, and occupational functioning levels of an individual.

18

Torres v. Barnhart, 139 Fed. App'x 411, 415 n.2 (3d Cir. 2005) (citing American Psychiatric

Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994)).  "A GAF score

falling between 41 and 50 indicates 'serious symptoms (e.g., suicidal ideation, severe obsessional

rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school

functioning (e.g., no friends, unable to keep a job).'" Id. at n.4 (quoting Boyd v. Apfel, 239 F.3d

698, 702 (5th Cir. 2001)).  Further, a GAF score of 50 "indicates [that an individual] could

perform some substantial gainful activity[.]"  Hillman v. Barnhart, 48 Fed. App'x 26, 29 n.1 (3d

Cir. 2002).  Plaintiff's GAF score of 50 is therefore not dispositive as to her ability to work.

        Next, the Court will address the ALJ's treatment of the remainder of Dr. Gupta's

diagnoses.  In setting forth the evidence, the ALJ noted all of Dr. Gupta's findings.  (Tr. 25.)  The

ALJ did not rely on Dr. Gupta's diagnosis; instead he focused on Dr. Gupta's application of the

diagnosis in the Medical Source Statement of Ability to Do Work-Related Activities (Mental).

The Medical Source statement is the examining doctor's opinion as to "what the individual can

do despite his/her impairment(s)" and is based on the doctor's "findings with respect to medical

history, clinical and laboratory findings, diagnosis, prescribed treatment and response, and

prognosis."  (See Tr. 27, 266-67.)  As such, the ALJ relied on Dr. Gupta's own determination of

Plaintiff's ability to work based on his diagnosis and other factors within the record.  In the

Medical Source Statement, Dr. Gupta found that Plaintiff's "ability to understand, remember, and

carry out instructions" and her "ability to respond appropriately to supervision, co-workers, and

work pressures in a work setting" were unaffected by her impairments.  (Tr. 266-67.)  However,

he also found that Plaintiff's lower back pain and radiculopathy "limits sitting for long time and

standing and walking . . ."  (Tr. 267.)

        In his decision, the ALJ rejected Dr. Gupta's application of his diagnosis, relying on

Plaintiff's work history and her testimony to find that Plaintiff had more severe limitations than Dr. Gupta posited.  (Tr. 27 ("After a review of the entire record, I am of the opinion that [Plaintiff] does have slight limitations in her ability to respond appropriately to supervision, co-workers, and work pressures in a work setting. . . . She has difficulties and then moves on to other jobs.  She admitted she got fired from her last job because she 'blew up' at her boss.")  Therefore, the ALJ weighed Dr. Gupta's testimony, objective medical facts, Plaintiff's own descriptions of pain, and Plaintifff's work history and background prior to rejecting Dr. Gupta's opinion.  See Blalock, 483 F.2d 773.  In short, "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision," Sassone, 165 F. App'x at 955, and the record in this case provides such support for the ALJ's rejection of Dr. Gupta's opinion.

This Court has reviewed the ALJ's decision and the record it is based on.  In summary, the ALJ examined the medical evidence of Plaintiff's complaints dating back to July 28, 2003 and concluded that Plaintiff retained the residual functional capacity to perform sedentary work and remains capable of performing her past relevant work.  Although Plaintiff has pointed to evidence of the pain from which she claims to suffer that may contradict this conclusion and has cited what she believes to be analytical flaws in the ALJ's decision, she has not demonstrated that the ALJ's determination was unsupported by substantial evidence.  In conclusion, the ALJ's decision was supported by substantial evidence and will be affirmed.

### III.  CONCLUSION

For the reasons stated above, this Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

Dated: August 4, 2008

＿＿＿＿ s/ Stanley R. Chesler ＿＿＿＿＿＿
STANLEY R. CHESLER, U.S.D.J.